**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES,<br><br>                Plaintiff,<br><br>v.<br><br>KOLE AKINOLA,<br><br>                Defendant | Criminal Action No.: 11-310 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

The trial of the above-captioned matter is currently set to commence on January 25, 2017. (*See* ECF No. 259). In advance of trial, both the Government and Defendant Akinola filed an omnibus motion seeking a number of pre-trial determinations from this Court. (*See* ECF Nos. 237, 238). These motions have been extensively briefed by both parties and have been extensively argued before this Court.

Of the numerous pre-trial motions pending before the Court, the motion that has weighed most heavily on this Court is Defendant Akinola's motion to dismiss this matter pursuant to the Sixth Amendment right to a speedy trial. Defendant has remained in custody pending trial since April 27, 2011—the date of his arrest leading to the pending charges. Thus, as of the date of this Opinion, Mr. Akinola has been detained for over sixty-eight months. Indeed, this matter has a long and tortuous procedural history, involving six defense attorneys and extensive motion practice and in-court proceedings. While the Court notes that Mr. Akinola is certainly not faultless in bringing about this substantial delay, after a careful balancing of the factors outlined by the

1

Supreme Court in *Barker v. Wingo*, and as explained below, this Court grants Mr. Akinola's motion to dismiss this matter on Sixth Amendment grounds.

## I. Legal Standard: Motion to Dismiss for Violation of Sixth Amendment Right to a Speedy Trial

"The Sixth Amendment guarantees that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . .'" *Doggett v. United States*, 505 U.S. 647, 651 (1992). When evaluating a defendant's claim of violation of his Sixth Amendment speedy trial rights, courts balance four factors outlined by the Supreme Court in *Barker v. Wingo*. 407 U.S. 514, 530 (1972). Specifically, courts consider: "the length of the delay; the reason for the delay; defendant's assertion of the right; and prejudice to the defendant." *Gov't of the V.I. v. Burmingham*, 788 F.2d 933, 936 (3d Cir. 1986) (citing *Barker*, 407 U.S. at 530). However, "[n]one of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533). The Court evaluates each of these factors, in turn.

## II. Discussion

### i. Length of Delay

"The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into other factors that go into the balance." *Barker*, 407 U.S. at 530. Defendant Akinola has remained in custody since his arrest on April 27, 2011-over sixty-eight months as of the date of this Opinion is entered. The Third Circuit has found that "a fourteen and one-half month delay triggers a *Barker* inquiry." *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993). Thus, the Court and the Parties agree that Defendant's pre-trial incarceration is sufficient to trigger this Court's review of the remaining factors. (ECF No. 238 ("Def.'s 9/29/16 Br.") at 22; ECF No. 250 ("Gov't 11/17/16 Br.") at 2).

Moreover, although the length of the delay is typically treated as a threshold inquiry, the Third Circuit has explained that as the delay "continues to lengthen it imperceptibly grows in a second aspect, incrementally adding its weight to any actual harm that the record shows the defendant suffered as a result of the delay." *Hakeem*, 990 F.2d at 760. Stated differently, "[i]f the delay is sufficiently long, courts assess the extent to which the delay was long enough to 'intensify' the prejudice caused by the delay." *Battis*, 589 F.3d at 678. In *Battis*, the Third Circuit held that a forty-five-month delay in a relatively straightforward case was sufficient "to intensify any prejudice caused by the delay." *Battis*, 589 F.3d at 679. While the nature of the charges pending against Mr. Akinola are far from straight-forward, the Court nonetheless finds that the sixty-eight-month delay in this case has intensified any prejudice caused by the delay, and therefore finds that the first factor weighs in Defendant Akinola's favor.

### ii.    Prejudice to the Defendant

"The most important [*Barker*] factor is prejudice." *Hakeem*, 990 F.2d at 760. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532.   The Supreme Court has enumerated those interests as follows: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.*

Here, Defendant asserts prejudice under the first and third factors—that is, the "oppressive pretrial detention and impairment to the defense." (Def.'s 9/29/16 Br. at 24-27). As to the first element, Defendant maintains that the length of pre-trial incarceration in this case of well over five years constitutes oppressive pretrial incarceration that is sufficient to support a finding of irremediable prejudice. (*Id.* at 25).

With regards to the third interest, Defendant maintains that his defense has been prejudiced by the refusal of one of Mr. Akinola's key witnesses to continue to cooperate with defense counsel.

(*Id.* at 26).  Specifically, in a certification filed in support of his pre-trial motions, Mr. Akinola states that for nearly three years after his arrest, he maintained a positive relationship with his ex-girlfriend, one Ms. Bailey, who cooperated with prior defense counsel.  (*Id.*) (citing ECF No. 238-2, Kole Akinola Aff. ¶ 9).  However, according to Defendant, "[n]ow, five years and five months after his arrest, Ms. Bailey refuses to speak with defense investigators, and expressed a desire to put the whole situation behind her."  (*Id.*).  Defendant contends that Ms. Bailey's refusal to cooperate as a witness will greatly prejudice his defense because she was one of few known witnesses of this case and would have been able to testify to the prior drivers of the vehicle and its contents.  (*Id.*).

Finally, as an additional grounds for a finding of prejudice, Defendant cites to Federal Rule of Criminal Procedure 48(b) which permits the Court to dismiss an indictment "if unnecessary delay occurs in . . . bringing a defendant to trial."  (*Id.* at 26-27 (citing Fed. R. Crim. Pro. 48(b)(3))).  Defendant notes that prejudice may be found if witnesses are likely to have suffered a loss in memory based upon the delay.  (*Id.* (citing *Moore v. Arizona*, 414 U.S. 25, 27 n.2 (1973))).

For its part, the Government notes that "defendant Akinola has not pointed to any evidence in the record that shows Ms. Bailey would have been able to establish that the items in the Camaro did not belong to the defendant."  (Gov't 11/17/16 Br. at 5).  The Government further states that "Ms. Bailey has previously stated to law enforcement officers that the Camaro was empty of contents when she lent the vehicle to defendant Akinola"; however, the Government has not cited to the record in support of this proposition and, in any event, the existence of this evidence would not entirely negate Ms. Bailey's ability to serve as a defense witness.  (*Id.*).  The Government also argues that any presumption of prejudice caused by the length of delay "can be mitigated by a showing that defendant acquiesced in the delay."  (*Id.* at 4 (citing *Battis*, 589 F.3d at 682)).

Although Mr. Akinola has not provided recorded evidence demonstrating that Ms. Bailey would be able to substantiate his defense, the Court finds Defendant's position as to Ms. Bailey to be persuasive. That is, "consideration of prejudice is not limited to the specifically demonstrable." *Doggett*, 505 U.S. at 655. In other words, a defendant can show prejudice even in the absence of "affirmative proof of particularized prejudice." *Id*. Indeed, "[g]iven that 'time's erosion of exculpatory evidence and testimony' can hinder a defendant's ability to prove that his defense was impaired by a delay, the [Supreme] Court [has] stated that 'we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *Battis*, 589 F.3d 673, 682 (3d Cir. 2009) (quoting *Doggett*, 505 U.S. at 655-56). In Defendant Akinola's case, the Court is concerned that the sixty-eight-month delay in bringing this matter to trial has undermined the truth-seeking process. While the Court agrees with the Government, as discussed in greater detail below, that Mr. Akinola has acquiesced to a significant extent in the delay, the Court's concern in affording Defendant a right to a fair trial in which his defense is not prejudiced outweighs any mitigation caused by Defendant's own actions. Therefore, the Court finds that the prejudice factor weighs in favor of dismissal.

### iii.    Reasons for Delay

The Court now considers the second-enumerated *Barker* factor— "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651. The Supreme Court has provided the following guidance in analyzing the justifications for the delay offered by the Government:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less

heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.  It is the Government that "bears the burden to justify the delay," *Hakeem*, 990 F.2d at 770, and courts "subtract the amount of delay caused by the defendant from the delay caused by the Government."  *Battis*, 589 U.S. at 680.

It is this factor that gives the Court the greatest pause.  Given the long and tortuous procedural history of this matter, it is difficult, if not impossible, to assign blame to one party or another for every single period of the sixty-eight-month delay.  For example, having painstakingly reviewed the entire docket of this matter, the Court notes that there have been no less than seven continuance orders entered in this matter.  (*See* ECF Nos. 11, 98, 131, 139, 200, 203, 225).  Many continuance orders were filed either at Defendant's request or with his consent.  (*See* ECF No. 11, joint application for two-month continuance; ECF No. 98, joint application for nearly four-month-continuance "so that new defense counsel can familiarize himself with the case and file any necessary documents in support of the defendant's *pro se* motion for reconsideration . . ."; ECF No. 131, joint request for a nearly four-month-continuance; ECF No. 139, ordering over two-month continuance upon joint request).  Thus, it is undeniable that both the Government and Defendant Akinola have contributed to the extensive pre-trial delay.

To be clear, the Court, in its prior opinions denying Defendant's bail motions, attributed much of the delay in this matter to Defendant's litigation strategy—a strategy that has been marked by three requests for new counsel and subsequent adjournment requests to permit new counsel time to familiarize themselves with the case, the filing of eight bail motions and numerous *pro se* letters to the Court, and several motions for reconsideration of this Court's opinions and orders. (*See, e.g.,* ECF No. 221).  Accordingly, the Court maintains that Mr. Akinola himself is responsible for much of the delay in this matter.

6

That said, the Court is guided in its Sixth Amendment analysis by the Third Circuit case of *Burkett v. Fulcomer*, 951 F.2d 1431 (3d Cir. 1991). In *Burkett*, the Third Circuit held that the district court erred in attributing much of the blame for the delay in trial to the defendant, reasoning as follows:

> Certainly Burkett's aggressive petitioning of the courts required additional paperwork, scheduling of hearings and courtroom time. Yet, by the filing and argument of these motions, which the district court weighed *against* him, [defendant] sought merely to compel the Blair County Court to act upon his post-trial motions, or to obtain counsel who would either petition the Court to act, to preserve his speedy trial rights, or to secure his appeal rights. It was not unreasonable for Burkett to move for new counsel in view of his perception that his counsel was not receptive to his pleas to have his post-trial motions heard. . . .

*Id.* at 1441. Defendant argues that like his counterpart in *Burkett*, his "attempts to thoroughly and vigorously defend against substantially different charges, with the aid of effective representation, were not unreasonable under the circumstances." (ECF No. 258 ("Def.'s 12/2/16 Br.") at 5).

In granting Defendant's requests for new counsel, as well adjournment requests and requests to file bail motions, this Court implicitly found these requests to be reasonable. For example, at a January 7, 2016 hearing, the Undersigned granted Defendant Akinola's and his then-attorney's joint request for the substitution of new counsel, citing a "breakdown of the attorney/client situation here." (ECF No. 191, Tr. of 1/7/16 hearing at 31:17-19). Thus, although Defendant—rather than the Government—is the source of much of the delay in this matter, *Burkett* stands for the proposition that the Court should not weigh against Defendant delays caused by his attempts to vigorously pursue his defense. That said, however, the Court declines to weigh these delays against the Government, who has on numerous occasions expressed its frustration in the delay caused by Mr. Akinola's conduct.

The Government concedes that it is not entirely faultless for the delay—attributing seven-months of the delay to its own conduct. (ECF No. 256, Tr. of 11/28/16 Hrg. at 57:11-18).

However, Mr. Akinola has certainly not been his greatest advocate in ensuring the speedy disposition of the charges against him.   On balance, the Court finds this factor to be neutral.

### iv.   Defendant's Assertion of the Right

The final factor courts consider under *Barker* is the extent to which a criminal defendant has asserted his right to a speedy trial.  *Barker*, 407 U.S. at 532.  As the *Barker* Court explained, "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."  *Id.*

Here, Defendant has asserted his Speedy Trial rights several times: (1) in his April 21, 2014 bail motion (ECF No. 127 at 1-2); (2) in a January 29, 2015 letter to the Court in which he represented that then-counsel waived Defendant's speedy trial rights against Defendant's wishes (ECF No. 149); and (3) on September 15, 2015, in appealing the denial of his bail to the Third Circuit.  (Def.'s 9/29/16 Br. at 24).  Notwithstanding these assertions, the Government urges this Court to find that Defendant's conduct in delaying this trial counters any attempts to assert his rights.  (Gov't 11/17/16 Br. at 3-4).  However, given the above findings that the delay does not fall entirely at Defendant's feet, the Court declines to find that Defendant's conduct mitigated the assertions of his speedy trial rights to a point that the assertion of same was rendered a nullity. Accordingly, the Court finds that this factor weighs in Defendant's favor.

### v.   Summary

As discussed above, the Court finds that the following *Barker* factors weigh in favor of dismissal of this action: (1) the length of delay—here, a period of sixty-eight months; (2) prejudice to Defendant—here, the alleged loss of a potentially key defense witness and the general decline in trustworthiness of evidence, and; (3) Defendant's assertion of his speedy trial rights.  The remaining *Barker* factor—the reason for the delay—favors neither the Government nor Defendant.

Based upon this weighing of factors, the Court finds that Defendant's Sixth Amendment right to a speedy trial has been violated.  Accordingly, the Court grants Defendant's motion to dismiss this matter on speedy trial grounds.

### III.     Conclusion

For the reasons stated herein, the Court grants Defendant's motion to dismiss the charges against him on Sixth Amendment grounds, administratively terminates all remaining outstanding motions, and directs the Clerk of the Court to close this matter.  An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:  January 9, 2017

/s/ Jose L. Linares_____
JOSE L. LINARES, U.S.D.J.